UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NAJAH A.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

21-CV-06104-LJV
DECISION & ORDER

---

On February 2, 2021, the plaintiff, Najah A. ("Najah"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On December 27, 2021, Najah moved for judgment on the pleadings, Docket Item 6; on May 10, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on June 21, 2022, Najah replied, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Najah applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both Disability Insurance Benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Najah's motion and grants the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

I.    **THE ALJ'S DECISION**

On August 17, 2020, the ALJ found that Najah had not been under a disability since filing his application on February 16, 2018.  *See* Docket Item 5 at 19-30.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 416.920(a).  *See id.*

At step one, the ALJ found that Najah had not engaged in substantial gainful activity since applying for benefits on February 16, 2018.  *Id.* at 21.  At step two, the ALJ found that Najah suffered from several severe, medically determinable impairments: seizure disorder, depression, anxiety, and morbid obesity.  *Id.*

At step three, the ALJ found that Najah's severe, medically determinable impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 22-24.  More specifically, the ALJ found that Najah's physical impairments did not meet or medically equal listing 11.02 (epilepsy).  *Id.* at 22.  The ALJ likewise concluded that Najah's mental impairments did not meet or medically equal listing 12.04 (depressive, bipolar, or related disorders) or 12.06 (anxiety and obsessive-compulsive disorders).  *Id.*  In assessing Najah's mental impairments, the ALJ found that Najah was: (1) mildly impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing himself.  *Id.*

The ALJ then found that Najah had the RFC[4] to perform "sedentary work" as defined in 20 C.F.R. § 416.967(a) except that:

> [Najah] can stand or walk for 2 hours of an 8-hour workday; he can sit for 6 hours of an 8-hour workday; he can lift or carry 10lbs [sic] occasionally and up to 10lbs [sic] frequently; he can occasionally balance; he must avoid unprotected heights, heavy moving mechanical parts and machinery, and industrial vibrations; he can frequently manage change to the workplace environment and/or tasks; he is able to have occasional contact with co-workers and the general public; he is able to understand, remember, and apply simple instructions and directions; and he is able to perform work commensurate with a specific vocal preparation (SVP) of 1-3.

*Id.* at 25.

At step four, the ALJ found that Najah had no past relevant work. *Id.* at 28. But at step five, the ALJ found that given Najah's age, education, and RFC, Najah could perform substantial gainful activity as a final assembler, lens inserter, or a machine tender and feeder. *Id.* at 28-29; *see Dictionary of Occupational Titles* 713.687-018, 1991 WL 679271 (Jan. 1, 2016); *id.* at 713.687-026, 1991 WL 679273; *id.* at 689.585-018, 1991 WL 678364. Therefore, the ALJ found that Najah was not entitled to SSI. *See* Docket Item 5 at 29-30.

## II.   ALLEGATIONS

Najah argues that the ALJ erred in two ways. *See* Docket Item 6-1 at 15-20. First, he argues that the ALJ erred by "substitut[ing] his own lay judgment for the mental

---

[4] A claimant's residual functional capacity ("RFC") is the most he "can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

4

health opinion evidence, erroneously elevating the reviewing opinion over the examining and treating opinions[.]" *Id.* at 15. Second, he argues that the ALJ erred by "failing to consider the consistency between examining and treating opinions in contravention of the new regulations." *Id.* This Court disagrees and therefore affirms the Commissioner's finding of no disability.

## III. ANALYSIS

### A. ALJ's Preference of Reviewing Opinion

Najah argues that the ALJ improperly relied on his own lay opinion when he "erroneously elevat[ed] the reviewing opinion" of the state agency review consultant, L. Blackwell, Ph.D., over the opinions of a consultative examiner, Yu-Ying Lin, Ph.D., and a licensed clinical social worker ("LCSW"), Renee Scanlon. *See* Docket Item 6-1 at 16. In making that argument, Najah seems to suggest that an ALJ cannot value the opinion of a consultant who reviews the medical records more than the opinion of an examining or treating medical provider. *See id.* at 17 ("Additionally, the ALJ erred in elevating the *reviewing* opinion over these two consistent examining and treating opinions." (emphasis in original)). But that is simply incorrect.

As part of the disability determination, an ALJ must consider prior administrative findings, such as Dr. Blackwell's opinion, because "State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). And no rule prohibits an ALJ from favoring a prior administrative finding over the opinions of treating or examining sources, *see* 20 C.F.R. § 416.920c(a); in fact, "the opinions of nonexamining sources [may] override

5

treating sources' opinions, provided they are supported by evidence in the record," *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). *See Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 10 (W.D.N.Y. 2022) ("Other than her blanket statement that an ALJ should always credit the opinion of an examining physician over the opinion of a non-examining physician—which, as explained above, is not required in all circumstances—Plaintiff offers no meaningful argument as to why the ALJ erred in crediting the opinion offered by [a psychological consultant] over that offered by [a consultative examiner]. Accordingly, Plaintiff is not entitled to remand on this basis.").

So the fact that the ALJ found Dr. Blackwell's opinion "persuasive," while finding Dr. Lin's opinion "largely, but not entirely, persua[sive]" and LCSW Scanlon's opinion unpersuasive, *see* Docket Item 5 at 23, 26, is not grounds for remand. The real question is whether the record adequately supports those findings. *Cf. Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). And it does.

### B. Supportability and Consistency

For claims filed on or after March 27, 2017, such as Najah's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a); *see Angela H.-M.*, 631 F. Supp. 3d at 7. Instead, the ALJ "articulate[s] . . . how persuasive [he or she] find[s] all of the medical

6

opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 416.920c(b).

The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors "that tend to support or contradict" the opinion. *Id.* § 416.920c(c)(1)-(5). The ALJ always must "explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and he or she "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* § 416.920c(b)(2).

Najah argues that the ALJ erred by inadequately evaluating the medical opinions in the record. *See* Docket Item 6-1 at 16-18. More specifically, Najah faults the ALJ for "consider[ing] the opinions of Dr. Lin and LCSW Scanlon[] without ever considering how consistent the two opinions were in the limitations to which they opined." *Id*. at 16.

Dr. Lin examined Najah on May 30, 2018. *See* Docket Item 5 at 401-04. Dr. Lin opined that Najah was (1) moderately to markedly impaired in understanding, remembering, and applying complex directions and instructions; (2) mildly impaired in using reason and judgment to make work-related decisions; (3) moderately impaired in interacting adequately with supervisors, co-workers, and the public; (4) markedly impaired in sustaining concentration, persistence, or pace; (5) mildly impaired in sustaining an ordinary routine and regular attendance at work; (6) markedly impaired in

regulating emotions, controlling behavior, and maintaining well-being; (7) not impaired in maintaining personal hygiene and appropriate attire; and (8) not impaired in being aware of normal hazards and taking appropriate precautions.  *Id.* at 403-04.  Dr. Lin attributed Najah's difficulties to "stress-related problems" and concluded that "[t]he results of the evaluation are consistent with psychiatric problems . . . [that] may significantly interfere with [Najah's] ability to function on a daily basis."  *Id.* at 404.

On December 17, 2018, LCSW Scanlon completed a medical source statement evaluating Najah's impairment in the four areas of mental work-related functioning.  *See id.* at 629-31.  LCSW Scanlon opined, among other things, that Najah was (1) markedly impaired in understanding, remembering, or applying information; (2) markedly impaired in interacting with others; (3) markedly impaired in concentrating, persisting, or maintaining pace; and (4) markedly to extremely impaired in adapting or managing himself.  *Id.* at 631.

To begin, the ALJ was not obligated to analyze LCSW Scanlon's opinion under section 416.920c.  A "medical opinion" under section 416.920c must be from an "acceptable medical source," *see* 20 C.F.R. § 416.913(a)(2), and a licensed clinical social worker is not an "acceptable medical source," *see id.* § 416.902(a).  Instead, the opinion of a licensed clinical social worker is evidence from a "nonmedical source," *id.* § 416.902(j)(3), so the ALJ did not need to articulate how he considered the supportability and consistency of LCSW Scanlon's opinion, *see id.* § 416.920c(d).

Moreover, contrary to Najah's contention, even if LCSW Scanlon's opinion was a medical opinion, the ALJ was not obligated to explicitly articulate the consistency between the opinions of LCSW Scanlon and Dr. Lin.  *See id.* § 416.920c(b)(1)

8

("Because many claims have voluminous case records[,] . . . it is not administratively feasible . . . to articulate . . . how [the] considered all of the factors for all of the medical opinion . . . in [the claimant's] case record."). And the ALJ indeed discussed the consistency between Dr. Lin's and LCSW Scanlon's opinions and rest of the medical record. *See* Docket Item 5 at 23, 26.

For example, in addressing Dr. Lin's opinion, the ALJ noted that "[t]he record certainly demonstrates moderate limitations . . . with respect to [Najah's] ability to interact with others." *Id.* The ALJ also noted that "Dr. Lin's assessment of no limitations with respect to [Najah's] ability to appreciate hazards[,] combined with mild limitations with respect to sustaining a routine and marked limitations with respect to his ability to regulate his emotions and behavior[,] together suggest moderate limitations overall . . . with respect to [Najah's] general ability to adapt or manage himself, an assessment that is fully consistent with the record as set forth above." *Id.* And the ALJ found that Dr. Lin's "assessment of marked concentration limitations for [Najah] has no basis in the record, given [Najah's] sporadic and inconsistent mental health treatment and normal mental status exams." *Id.* So the ALJ explicitly addressed the consistency between Dr. Lin's opinion and the record. *See* 20 C.F.R. § 416.920c(c)(2) (defining "consistency" in terms of a relationship between a particular medical opinion and "evidence from other medical sources and nonmedical sources in the claim").

As for LCSW Scanlon, the ALJ noted that her opinion was "directly contradicted by [Najah's] sporadic mental health treatment and the consistently normal findings upon mental status examination in the record, including those contained in Ms. Scanlon's own

9

treatment records." *Id.*  So the ALJ explicitly discussed both the supportability and consistency factors before finding that opinion "unpersuasive." *Id.*

Based on the ALJ's discussion of Dr. Lin's and LCSW Scanlon's opinions, this Court concludes that the ALJ appropriately analyzed the opinions in light of the factors listed in section 416.920c.

### C. The ALJ's Step Three Determination

Although Najah does not explicitly say so, a fair reading of his motion papers raises the issue of whether the ALJ's assessment of the "paragraph B" factors at step three of the disability determination was supported by substantial evidence.  This Court therefore addresses that issue.

When considering whether a claimant's impairments meet or medically equal the criteria of one of listings in 20 C.F.R. Par. 404, Subpart P, Appendix 1, the ALJ must assess the claimant's degree of impairment in four areas of mental work-related functioning.  *See* 20 C.F.R. § 416.920a(c).  This process is known as the "special technique." *Id.* § 416.920a(a); *see generally Kohler v. Astrue*, 546 F.3d 260 (2d Cir. 2008).  The four areas of mental work-related functioning, collectively known as the "paragraph B criteria," are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 416.920a(c)(2); *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00E.  To be found disabled at step three, the claimant must have a "marked" impairment in two areas or an "extreme" impairment in one area.  *See* 20 C.F.R. § 416.926(b)(2)(ii).

As discussed above, the ALJ found that Najah was: (1) mildly impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or pace; and (4) moderately impaired in adapting or managing himself. Docket Item 5 at 22. After reviewing the evidence in the record and the ALJ's written determination, this Court finds that the ALJ's assessment of Najah's mental work-related functioning at step three was supported by substantial evidence.

In deciding whether a claimant is disabled, an ALJ may consider the lack of consistent treatment or refusal to follow a prescribed course of treatment. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983); *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014); *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012). An ALJ also may consider a claimant's activities of daily living, including whether the claimant engaged in some form of work-related activity during the relevant period. *See, e.g.*, *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (upholding ALJ's step three determination based, in part, on claimant's ability to perform some work activities); *see also* 20 C.F.R. § 416.971 ("Even if the work you have done [during the relevant period] was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Here, as the ALJ noted, Najah engaged only in "the intermittent use of prescription medication and sporadic attendance at individual psychotherapy" as treatment for his mental health issues. Docket Item 5 at 25; *see id.* at 534 (treatment note in which Najah informed his provider that he had stopped taking his depression medication because he felt that medication was no longer necessary); *id.* at 636

("[Najah] received care management services during this time . . . and did well with this service.  He also was referred for a psych[ological] eval[uation] while he was here, but [he] decided against medications offered. . . . [Provider] discussed [discharge] with [Najah], [who] was in agreement."); *see also id.* at 643-67 (notes from Najah's treatment with LCSW Scanlon between December 2018 and June 2019, after which Najah did not seek further therapy or counseling).  Moreover, Najah worked part-time as an accountant for a local market during the relevant period, suggesting that his impairment was not as severe as he alleged.  *See id.* at 49-52, 194.  All that supports the ALJ's finding that Najah was no more than moderately impaired in the four areas of mental work-related functioning.

What is more, the ALJ's determination at step three also was supported by Dr. Blackwell's opinion.  Based on a review of the entire record, Dr. Blackwell opined that Najah was: (1) mildly impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing himself.  *See id.* at 75.  And the ALJ concluded that Najah was impaired exactly as Dr. Blackwell opined.  *See id.* at 22.  So the ALJ's finding of a moderate impairment in each of the four areas of mental work-related functioning was supported both by Najah's treatment history and activities of daily living and by Dr. Blackwell's opinion.

## **CONCLUSION**

At their core, Najah's arguments boil down to a disagreement with the ALJ's weighing of the opinion evidence, but it is "not the function of this Court to re-weigh

evidence or consider *de novo* whether [he] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021).  Because the ALJ's assessment was supported by substantial evidence, this Court cannot and will not second-guess it.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

In sum, the ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Najah's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 8, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:  August 1, 2023
        Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE